When you're ready, the clerk may call the next case. 12 63 39 Tyrese Hall versus Gary Beckstrom. Oral argument not to exceed 15 minutes per side. Miss Schmidt for the petitioner appellate. Oh, please approach the podium and proceed. And please the court, counsel. I'm Kathleen Schmidt. I'm here to represent Tyrese Hall. I'd like to reserve two minutes for rebuttal. All right. The issue in this case, or the issue at trial was not whether Tyrese Hall and the intellectually disabled teenager was present in the alley when the crimes against Clifton Agnew were committed. That was not the issue. The issue was whether Tyrese Hall intended Mr. Agnew's death, whether he sodomized and robbed Mr. Agnew, or whether he helped the Edmond brothers do these things. His defense was that he was present during these events, but Derek Edmonds savagely beat and sodomized Clifton Agnew and Dwayne Edmonds robbed him. Yet the trial court admitted victim impact evidence from Kay Thomas, a PR professional and a total stranger to Clifton Agnew about her emotional response to the impact of his injuries and about the emotional reaction of the community when she started a card campaign to garner support for Mr. Agnew. This was so egregious, so unduly prejudicial that it caused the trial to be fundamentally unfair and violated Mr. Hall's due process rights. This really was... I understand that it was improper. How is it prejudicial? That's what I'm having a hard time seeing. Here's how it was... Here you have to say that the court unreasonably... That the state court unreasonably said it was not prejudicial, right? Well, and this is an odd presentation of this case, because as a magistrate judge framed the issue, the question could be, was it an unreasonable application of the test of whether it is so egregious that it causes the fundamental fairness? But I understand prejudice... There's an AEDPA filter here, is that correct? Right, because then if it's... Yes. Even if we thought there was prejudice, we would have to say it was unreasonable to think that there was not prejudice, right? I think what this court would ask is, was it an unreasonable application? Was it so prejudicial that it was an unreasonable application of Payne and Chambers? And that's how the magistrate judge framed the issue. I guess I just cut through the... Yes. The verbiage. We don't just decide whether it was prejudicial, we decide whether it was reasonable to determine that it was not prejudicial. Here's why... Here's... There is a reasonableness aspect to our determination, is that right? Yes. Here's why it was so prejudicial to Mr. Hall. One, you have to look at the powerful poetic language that this woman used. She talked about these magical cards that were filled with love and compassion and inspiration. They formed this mystical connection between her reading them to Agnew, who was not conscious at the time. These people never had one sentient word between them, but they formed a mystical bond. She thought that would cause a miraculous recovery in him. She talked about the outpouring from not only her emotions to him, but she talked in great detail about the response of the community to these things, which she asked for these cards, not just to support Mr. Agnew, but as a protest to what had been done to him. And talked about, ultimately, she received over 6,000 cards for him from not just Louisville, not just Kentucky, but all over the world. She receives gifts. She talked about the day he died. How does that apply to a reasonable juror, how to decide who did these things? Well, and one more point about the facts, and I will answer your question, Judge Rodgers, I will. The other side makes it sound like 18 minutes was not a long time. 18 minutes is a very long time for victim impact evidence. Victim impact evidence is generally very brief, straightforward, because it runs the risk. The prejudice is it runs the risk of inflaming the prejudice and passions of the jury, so that they focus on their sympathy for the victim and not on their oath, which is to take the evidence they hear at trial and apply that to the instructions that were given. As an example, Martin Luther King's I Have a Dream speech was 17 minutes long. JFK's inaugural address was 12 minutes long. Tyrese Hall's defense, as he presented it at trial, and no one else with personal knowledge of the events testified at trial, his defense would have given the jury an option to acquit him on all the charged defenses, because his defense was Derek Edmonds savagely beat and sodomized Clifton Agnew, and Duane robbed him. At the very least, it would have allowed the jury to also find a lesser homicide. But this focusing not only on... Plus, I think when you take... When you analyze the prejudice here and the egregious nature of this, you have to balance it against, was there any relevance at all? And one of the problems... That wasn't my question. You can say there's no answer to it, but the question is, how does it make a reasonable juror? Maybe jurors are gonna be unreasonable. How would it make a reasonable juror decide who did this, just by seeing how sympathetic we are with the terrible thing that happened to him? Everybody agrees the thing happened, right? It's not like it didn't happen. Everybody agrees the crime happened, and everybody agrees... Crime happened, and it was terrible. It was terrible to a human being, right? Yes. So, let's say you're a reasonable... Now, certainly there are unreasonable jurors, but let's say there's a reasonable juror. Why is a reasonable juror gonna have that affect them? Because the question here was not that this crime was committed and that it was horrific. The question was, which of these three men committed these, and here's how it had an effect. So, that makes the question even stronger. If the question is, which one did it, why does how bad it was tell you which one did it? Because... It doesn't seem to be related to that at all. Because even reasonable jurors... They were all before, they were all defendants at the same time before, right? Yes. So, the juror has to decide which one did it, and to say, this isn't just a crime against a meaningless person, it's a crime against someone who had support in the community. I don't see how that logically leads to which person did it. Because jurors are just humans. At the end of the day, even reasonable jurors that are trying to follow their oath, they are just humans. And at some point, you are so overwhelmed by the evidence and flaming your passions about what this man suffered, and the outpouring of not only one woman, but of the community in reaction to that, that you stop caring which of them did exactly what. You are gonna punish them all, and you are gonna punish them severely. And that is exactly what happened here. The evidence here was not overwhelming. And this goes to your question, Judge Rogers, the evidence really was not overwhelming. The forensic evidence strongly supported Tyrese Hall's trial testimony that it was Derek Edmonds that committed the lion's share of these crimes. His pants and boots were soaked in the victim's blood, as opposed to Tyrese had several splatters on his pants, his white shoes had no blood from Clifton Agnew. The jury dispassionately looking at the evidence and applying it to the instructions could well have acquitted Tyrese of all three of these charged offenses, even if they found him guilty of contributing to the homicide, because he did admit that he hit and kicked Mr. Agnew in the leg and in the side. But again, I wanna go back to the fact that I think in weighing how this would... There is a long jurisprudence, not only in the state of Kentucky, but in the federal system that does talk about the danger of victim impact evidence. And it is because you do not want the jury to focus on their sympathy and their passions for what the victim suffered to the exclusion of dispassionately analyzing evidence and applying it to the instructions that were given. But that is exactly what happened here. But here, it is just to the nth degree. I could not find a place where they let a total stranger testify, not only about the impact on her, but on the community as a whole. And what impact would that have on the jurors? Again, these are human. They are hearing that the community is behind this man. The community supports this man and is outraged about these injuries and feel anger and feel sympathy with him. Again, these would distract them from their jobs and their oath as jurors. And I believe this is why this evidence is kind of jealously guarded in how it comes in. And when it has come in, it has generally been allowed because it has been brief, it has either been relevant to another point, it has been humanizing, talking about the personal characteristics of the person, which she could not have known because she did not know him, or the impact on the family. And again, she could not have known that. She did not know him in his sentient life. She did not know his family. So these are how these are prejudicial to him. And what I would say too on the prejudice aspect is, this was... No crime is good. This was a particularly horrific crime and nobody disputes that. It is... I would submit that it is in that kind of case that you have to honestly be very careful that the jurors follow their oath, apply the evidence to the instructions, and instead, in this case, the opposite happened. What we saw was victim impact evidence introduced of a kind I could not... Of the cases where the courts in this circuit and other circuits have allowed victim impact evidence in the guilt phase, none of them were from strangers, none of them were about the reaction of the community. So this, when you look at egregious, if there's a scale from one to 10, we're at 10 on this one. And so that is why it is so unduly prejudicial that it's just an unreasonable application of pain and chambers for... To have allowed this evidence in. I want to quickly turn to the argument about the testimony concerning Larry Millican. Larry Millican was a homeless man who, several hours after the crime, gave statements to the police and also was shown a photo pack and identified Tyrese Hall, and failed to identify Derek Edmonds. What he told the police was he saw two black men in the event through an open window. For the next four months, the police believed that there were two... Based on that statement, that there were two men involved in this. Ultimately, nobody could find Larry Millican for trial. Honestly, everybody wanted him. Obviously, Dwayne Edmonds wanted him because Dwayne would have been the third person and this would have said Dwayne wasn't there. But the statements from three detectives and the opening argument of one of the defendants talked about these out of court statements of Millican. He was never found. He was never subpoenaed. There's no question that this was a Sixth Circuit violation. And the only question here is whether there was a grave... This court has a grave doubt about the harmlessness of the error. That's really what we're talking about. And it should. It made Tyrese's defense far less persuasive to the jury than it would have otherwise been. Again, this was not a single or fleeting reference. Three detectives, one opening statement. It wasn't cumulative on two key points. Nobody else at trial testified that there were only two men in the alley. Nobody at trial testified that there were only two men during the entire event. That directly contradicted Tyrese Hall's trial testimony of how this crime happened. He said that he, Derek, and Dwayne were all together when this started, so there were three men in the alley. He said Dwayne stayed. He picked up Clifton Agnew's wallet after the first exchange, and then he left. He also testified, and this was the key to his defense on the sodomy and on the beating. He testified that he came back and forth out of the alley three times, during which time Derek had begun to beat and then sodomize Mr. Agnew. And the out of court statements of Larry Millican that he couldn't challenge directly contradicted on that key point of his defense. It also implicitly contradicted Tyrese's testimony that he was telling Derek to stop. He was going and coming back and telling Derek to stop, and he was scared of Derek, but he did kept trying to tell him to stop. This was heard through an open window, and yet there was no statement from Millican that he heard anything. This damaged Tyrese's credibility. Again, as we've talked about, the evidence was far from overwhelming, and in fact supports Tyrese. So the jury could well have acquitted him, except for this out of court testimony that violated the Sixth Amendment from Mr. Millican. Thank you. May it please the court and counsel. My name is Christian Miller. I represent the warden in this case. I'm standing in for Mr. Brian Morrow, who's unable to be here today. I had prepared to address whether a deputy deference applied to the first issue as that was raised in the appellant's brief, but as I can see today, we've conceded that a deputy deference does apply under the first issue. And in light of that, I think you've hit the nail on the head, Judge Rogers, that the problem with this evidence, or the reason why this is not an unreasonable application to include established federal law, is because this evidence was not material at all. The victim impact evidence, if we call it that, and not the entire 18 minutes of her testimony was that, but it had absolutely no bearing on which of these defendants, if any of them, committed this horrendous crime. And that's what we look to under the 14th Amendment due process. Was he denied a fundamentally unfair trial? Was he given a fundamentally unfair trial? In Eage v. Eukins, which is cited by my opponent's brief, this court says, fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical, highly significant factor in the evidence. This is absolutely not. Again, in Eage, we had a entirely circumstantial case, and then you had an expert for the state come in and say that out of the 3.5 million people in Detroit, only Eage could have put bite marks on the corpse. And that was the linchpin of the evidence, and that was irrelevant and improperly admitted. And this court found that that was a denial of fundamental fairness. Here, we have 18 minutes of testimony in a three week long trial. Granted, that included voir dire and closing arguments and everything else, but I counted 24 witnesses who testified, most of them for hours, and introduced tons of inculpatory physical evidence, including blood on the defendant's pants, blood on both defendants. Can you address the Middleton evidence? Is that the name of the gentleman whose evidence was improperly admitted? Milligan, right. Milligan, I'm sorry. We conceded at... It just seems like the judge should have known immediately that that was improper the minute that... The judge should have... And I'm not a judge, so I can't stand here and say that I wouldn't have done the same thing, but we conceded at stake. Maybe the judge was distracted when the evidence from Kaye came in and allowed some evidence that wasn't even approved by his prior order. But here, it just seems striking. Understandably, Your Honor. And this was the co defendant who brought in this information, not the... Yeah, who was not there. Oh, the co defendant brought it in. The co defendant brought it in. Obviously, he was not there. This denied a confrontation clause rights, and we conceded that at stake court and argued that the error was harmless, and we conceded that... How can you say it's harmless? And argued that it's harmless. In large part, because it's cumulative, and in large part, because on a depth of deference, we're looking at the Brecht standard of, was this a substantial and injurious effect on the jury's verdict? And this court's also adopted the Van Arsdal factors under Vasquez v. Jones. And when we look at those factors, it is clearly a non prejudice... Sorry, this is not an unreasonable application to clear established law to find that this is a non harmful error. The first of those is the importance of the testimony to the prosecution's case. We didn't bring in the evidence, we didn't argue it. In fact, the trial court realized the error and admonished the jury prior to closing arguments that they were to not consider any of the Milligan evidence, which under Kentucky law, it's presumed that once you've admonished the jury that they don't consider that evidence. The second of the Van Arsdal factors is, was the testimony cumulative? Yes. Hall multiple times admitted his involvement in the case and even got up and testified, testified pursuant to an agreement that took life without the possibility of parole off the table. This was not testifying because Milligan's statement came in. Testifying in consideration for this benefit. The third factor, presence or absence of corroborating evidence. Again, tons of physical evidence. Why is the co defendant bringing it out then? Because Milligan had looked at the photo packs and could only identify Hall as one of the two who was on the scene. Didn't pick the co defendant out of the photo pack. So the co defendant is bringing it in to point the finger at Hall rather than the... Sparely at Hall, as opposed to that. I'm sorry? Yes, your honor. And why wouldn't that be prejudicial to Hall to have him pointed at instead of someone else? It is. Well, I'm not saying it's not prejudicial at all, I'm saying it doesn't have a substantial injurious effect in light of the remaining evidence that was brought in and in the Van Arsdall factors. Again, and continuing with those, the fourth one is the extent of the cross examination that was otherwise permitted. Again, in this case, they were allowed to cross examine every other witness, including the people who brought in Milligan's statements. And the fifth Van Arsdall factor is the overall strength of the prosecution's case. It's beyond strong in this case, including tons of physical evidence, tons of inculpatory statements by Hall. He wrote two affidavits claiming entire liability for the act. The co defendant brought in multiple jailhouse inmates who all said, we were in sales with Hall, Hall admitted to the entire act. And Hall even got on the stand and admitted. And to say that he was denied a complete defense, his attorney gets up in closing and says, he's guilty of at least manslaughter. Because there's no denying that Hall hit the victim. In fact, of the two, between Hall and Edmonds, Hall was the only one who had any visible injuries from the attack. And it was the injuries to the victim's head that ultimately the medical examiner concluded were the fatal injuries. Hall's hand was visibly swollen, no evidence of an injury on Edmonds. What's a crockpot? What is a crockpot? It's... Originally, I thought you were talking about like a flowerpot, but that's not what you're talking about. A crockpot, it's... At our house, we use them to make soups and stuff. It's a... With a plug sticking out of it? The plug sticking out of it. The appliance and everything, that's what was thrown at it? The appliance, yes, your honor. And it was shattered. And he admitted he was the one... They're made out of metal, aren't they? It was metal, it has a ceramic insert, and it was the ceramic insert that had come out and shattered everywhere. That was the brutality that Hall admitted that he exhibited on the... Mr. Agnew. What's a crockpot doing out? It was in the garbage can. I don't know, I don't frequent that area. You know, under epidepherence, oftentimes it seems that there's been an error in the trial, or some problem even of constitutional magnitude, and there's no Supreme Court case directly on point, so that when we afford epidepherence, we can't afford any relief to a defendant. But here with this Milligan, on the Confrontation Clause issue, and the Supreme Court's decision in Crawford, and all the cases that flow from Crawford, it seems difficult to uphold this testimony through a party that's... Through a witness who's not there with no opportunity to cross examine. Even with epidepherence, I'm wondering how we get around that. I don't know if Judge Scalia would be too happy with the way the trial was... Justice Scalia would be happy with the way the trial was run on that one issue of the Milligan testimony coming in through other witnesses. And we get past that through the Brecht harmless standard, because in habeas cases, and this was talked about in Brecht, is once we get to this point, this wasn't an issue that's been taken up to the US Supreme Court on direct appeal, so that they review this issue de novo. This is an issue that's come up through collateral attack, where we give deference to the state courts, we give comedy to the state courts who've expended all this energy, a passage of time has occurred, it's hard to get witnesses back and everything else. So we... Was this issue briefed on direct appeal in the state court? The... The confrontation clause issue, concerning what Mr. Milligan would have testified to. I believe it was raised as a Sixth Amendment claim. And like I said, we... You're conceding there was a violation though. Right, I don't think there's any real room to not say that. It's just the prejudice, is all that you're arguing. Certainly, and prejudice under habeas corpus, which is subject to the Brecht substantial injurious effect. And this court has to be left with a grave doubt as to the jury's verdict as a result of this evidence. Evidence that the jury was admonished not to even consider. Evidence that was not brought out by the prosecution, was not emphasized by the prosecution, was not used by the prosecution. In fact... I thought the prosecution referred to this testimony in his opening statement. No, it was the co defendant. It was the co defendant, and counsel can correct me if I'm wrong. Like I said, I just got on this case recently, but I believe it was the co defendant only. In fact, this wouldn't have been... It doesn't even make logical sense that we would have brought this out at trial. And I'm sorry. So... Would a government lawyer have stopped it in order to avoid it from happening? Is that... I'm just curious how that works. I don't know. I haven't done much trial work in Louisville. I haven't done any trial work in Louisville, so I don't know what their standards of practice are there. And again, this was tried as... Originally tried as a capital case as much as Edmonds was concerned. So there was a bevy of attorneys there, any one of whom could have stood up and objected. In fact, again, Hall's attorneys did object to this, and the trial court allowed in some of it. She did exclude some of the evidence. She didn't allow the photo pack to be shown to the jury, which did allow this. But again, we have to look at this evidence and decide that this singular piece of evidence, in light of the entire trial, had a substantial injurious effect such that you are left with a grave doubt as to the jury's verdict in this case. And there's no questioning that Hall committed these crimes. Hall admitted to hitting the victim. Hall... There's no doubt he was at the scene and participated, but some of the testimony of Milligan would have gone to whether he's... What specific acts he performed in the commission of the crime. With all due respect, Your Honor, I don't believe it did anything other than place him at the scene. I don't believe Milligan... Any of the evidence that was elicited about Milligan, he said he saw Hall commit any of these acts, just that he saw a criminal act being committed, and these two individuals were there, and he could identify Hall. I believe the only thing that even comes remotely close to that is he said there were two individuals there, and Hall later... Opposing counsel suggests that Milligan's testimony did not, or at least contradicted Tyrese's testimony that he left the scene and returned and attempted to stop the gentleman. And I'm trying to think, Your Honor. That may be the case that he said that they were there the whole time. I don't remember exactly if that's what came out or if it was just that there were two men on the scene. Either way, even if he says they were there the whole time, that's subject to an interpretation by a jury. When Hall says, I came and went, here's a man looking at this going back, does he see Hall walk to the end of the alley, come back, walk to the end of the alley, come back, and he considers that to be two people there the whole time? I mean, I would if I were witnessing the scene. But either way, it's not... The single piece of evidence was not... The lynch pin was not the most damaging evidence, was not the substantial injurious effect that Hall's making it out to be here on appeal. This was a small amount of evidence that the trial court admonished the jury not to consider, that wasn't used in closing arguments, that was brought out by the co-defendant, who... They didn't believe the co-defendant. They found him guilty and maxed him out, except didn't give him the death penalty. Gave him life without parole. Maxed him out on the sodomy and maxed him out on the robbery charges. So clearly, whatever light he was trying to use this evidence to paint Hall in, they didn't buy him. They didn't buy his story at all. So even if the point of this by the co-defendant was to point the finger at Hall and Hall alone, they weren't buying his story. So again, that goes to, is this court left in a grave doubt as to the verdict against Mr. Hall? And the warden would respectfully submit that the magistrate judge, the district court judge, and the Kentucky Supreme Court all were not clearly unreasonable in finding that this was not a substantial and injurious effect on the verdict. I see my time's almost out, so thank you, your honors. Thank you. Thank you. That rebuttal. What Larry Milliken meant when he said there were two men in the alley and he saw the whole event, that would have been something that you would like to have cross examined him about, and Hall would have liked to do that, but he didn't have that opportunity. The inference was from his statements, there were two men, two men only, they were there the whole time. That directly contradicts Hall's testimony, and Hall, again, for all the sound and fury that was presented at this case, there was not overwhelming evidence about what Tyrese Hall did. There was very little forensic evidence, actually, there were no fingerprints on any of these items that they got, like there was no fingerprint on the crock pot. Honestly, the Commonwealth dealt for Tyrese's Hall, they took life without parole off the table, so Tyrese would testify for them. Would they have done that if they thought they were suborning perjury, if they thought his version of events was untrue? No, they couldn't have, and it meant they needed him to win or they wouldn't have done that. His version was, they encountered Agnew. It was early in the morning, he was in a bad area town, Agnew raised up suddenly, scared him. Hall admits he punched him in the face. Hall then admits he threw the crock pot on his leg and he testifies to that, he says that in his statements. He admits there was some contact, and it's possible that he would have some liability for contributing to his death. The jury could infer maybe he didn't hit him on his leg, maybe he hit him in his head, but that was an open question. But the evidence that Derek Edmonds was the one that meted out the lion's share of abuse that this man took that caused his death came from Tyrese and the forensics. Why didn't the jury believe that? They didn't believe it because it was contradicted by these out of court statements that Larry Milliken said and nobody else was there to contradict Larry Milliken. Nobody else... Derek Edmonds, the only statement he ever gave was a complete and total lie, because he said he wasn't there. We know the parade of felons and the affidavits that Derek pressured Tyrese into signing were lies, because Hall couldn't have been the lone assailant. The forensics say there is no way Hall was the lone assailant. We know from that Derek Edmonds beat and sodomized Clifton Agnew, but the jury heard improperly admitted evidence. We have met the right standard and I'm asking for relief for Tyrese Hall. Alright, thank you. And the case will be submitted.